IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

OHIO VALLEY ENVIRONMENTAL
COALITION, INC.,
SIERRA CLUB,
WEST VIRGINIA HIGHLANDS
CONSERVANCY, INC. and
VIRGINIA RIVERS COALITION,

                    Plaintiffs,

v.                                       CIVIL ACTION NO.   3:15-0271

GINA MCCARTHY, Administrator,
United States Environmental Protection Agency and
SHAWN M. GARVIN, Regional Administrator,
United States Environmental Protection Agency,
Region III,

                    Defendants.

MEMORANDUM OPINION AND ORDER

Pending is Defendants' Motion for Reconsideration of an order requiring them to

supplement the administrative record in this environmental, agency review case. ECF No. 57.

Defendants, the national administrator and one regional administrator for the U.S. Environmental

Protection Agency (hereinafter collectively "EPA"), insist the Court made an error of law in

deciding Plaintiffs' Motion to supplement, ECF No. 45, by applying standards found in the

Administrative Procedure Act ("APA") to determine the sufficiency of the administrative record

pertaining to Plaintiffs' Clean Water Act ("CWA") claims, and by incorrectly assuming EPA made

certain judicially-reviewable, official administrative findings and decisions that warranted

supplementation. *Id.* at 1–2, 6. Additionally, EPA believes recent events have rendered moot the

necessity of supplementing the administrative record.[1] If reconsideration is denied, EPA asks the Court to revise the scope of the required supplementation, and to grant EPA more time to comply with the Order, ECF No. 54. For the reasons below, the Court **DENIES** Defendants' Motion for Reconsideration; clarifies the scope of the Order to supplement; and to the following extent, **GRANTS** Defendants' Motion for Extension of Time.

## I.      Background

Plaintiffs, several environmental interest groups, bring this citizen suit against EPA for failing to perform a non-discretionary duty under the CWA, 33 U.S.C. § 1313(d)(2), to reject the West Virginia Department of Environmental Protection's ("WVDEP") decision to not develop Total Maximum Daily Loads ("TMDLs") for certain West Virginia streams previously identified as "biologically impaired" due to "ionic stress."[2] The Parties agreed this case would be decided by the Court based on an administrative record filed by EPA and cross-motions for summary judgment. A schedule proposed by the Parties and adopted by this Court required the Parties to submit cross-motions for summary judgment before EPA filed an administrative record. To inform the summary judgment motions, EPA agreed to file a certified index to the administrative record

---

[1] EPA also renews its argument that it should be permitted to file an agency-prepared "supplemental explanatory statement," in lieu of supplementing the record with materials the agency actually considered (or should have considered). Mot. Recons. 11, ECF No. 57. EPA contends that a statement by the agency explaining its inaction is appropriate in cases premised on actual or constructive submission claims under the Clean Water Act. For the reasons offered in the Order to supplement, *Ohio Valley Envtl. Coal., Inc. v. McCarthy*, No. 3:15-0271, 2016 WL 2733137, at *n.4 (S.D.W. Va. May 10, 2016), *available at* ECF No. 52,  the Court finds a supplemental explanation by EPA will not render the administrative record complete. And so, the Court will not permit EPA to file a supplemental explanatory statement in lieu of supplementing the record with materials the agency actually considered, directly or indirectly.

[2] The CWA citizen suit provision is found at 33 U.S.C. § 1365. Other background information relevant to this motion to reconsider can be found in *Ohio Valley Envtl. Coal.*, 2016 WL 2733137 (Order to supplement), and *Ohio Valley Envtl. Coal., Inc. v. McCarthy*, 313 F.R.D. 10, 14 (S.D.W. Va. 2015) (denying intervention to West Virginia Coal Association).

and to make the documents contained in that index available to Plaintiffs. EPA did both. After Plaintiffs filed their cross-motion for summary judgment, EPA supplemented the administrative record and filed its summary judgment motion, which relied in part on the newly filed material. Plaintiffs responded to EPA's summary judgment motion and asked for an order that required EPA to supplement the administrative record with several documents, some identified and some not identified, and that allowed for discovery.

On May 11, 2016, the Court partially granted and denied Plaintiffs' Motion to supplement. *Ohio Valley Envtl. Coal.*, 2016 WL 2733137. In its Order to supplement, the Court found the administrative record was incomplete because EPA, in briefing on the Motion to supplement, had failed to state what documents EPA actually relied upon in forming several conclusions that were necessary precursors[3] to EPA's not promulgating TMDLs for ionically impaired streams in West Virginia.[4] And so, the Court required EPA to supplement the administrative record with any non-deliberative and unprivileged materials that EPA relied upon directly or indirectly in deciding: (1) WVDEP's duty under the CWA to submit ionic toxicity TMDLs was satisfied by the state agency's deadlines for developing ionic toxicity TMDLs submitted in its § 303(d) Lists; (2) development of that methodology is "well underway"; and (3) EPA could rely on WVDEP's representations in submissions to EPA in order to meet EPA's own duties under the CWA. EPA was further ordered to supplement the administrative record with any materials unfavorable to these decisions, even if

---

[3] The Order to supplement loosely referred to these forerunner conclusions as decisions, but carefully avoided calling them judicially-reviewable, formal agency findings or decisions.

[4] More specifically, EPA failed to indicate what documents it relied upon in deciding: (1) WVDEP's burden under the CWA was met by WVDEP's proposed deadlines for setting ionic toxicity TMDLs, and by WVDEP's efforts at crafting a new assessment methodology in compliance with a 2012 state legislative enactment; and (2) EPA could rely on WVDEP's representations regarding its deadlines and efforts in order to meet EPA's own duties under the CWA, namely the alleged duty to promulgate TMDLs for impaired rivers when a state has failed to do so.

EPA did not rely on that information in making the decisions. The Order to supplement required compliance within two weeks, and it provided for additional briefing based on the soon-to-be supplemented administrative record.

EPA now asks the Court to reconsider the Order to supplement based on several arguments discussed below. Having provided the background for this motion, the Court will explain the standard for reconsidering an interlocutory order in Part II, and the Court discusses EPA's motion to reconsider the Order to supplement in Part III.

## II.    Legal Standard

Under Federal Rule of Civil Procedure 54(b), "[a]n interlocutory order is subject to reconsideration at any time prior to the entry of a final judgment." *Fayetteville Inv'rs v. Commercial Builders, Inc.*, 936 F.2d 1462, 1469 (4th Cir. 1991); *see also* Fed. R. Civ. P. 54(b) (2016). The Fourth Circuit has not announced a standard of review for motions to reconsider interlocutory orders, *Howard v. W. Virginia Div. of Corr.*, No. 2:14-cv-13695, 2016 WL 958698, at *2 (S.D.W. Va. Mar. 14, 2016), but at the very least, such motions "are not subject to the strict standards applicable to motions for reconsideration of a final judgment," *Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 514 (4th Cir. 2003). Instead, the decision whether or not to modify an interlocutory order is committed to the district court's discretion. *Murphy Farms*, 326 F.3d at 514; *Saint Annes Dev. Co. v. Trabich*, 443 Fed. App'x 829, 832 (4th Cir. 2011). It is improper to file a motion for reconsideration simply to ask the Court to rethink what it already thought through. *Pennsylvania Higher Educ. Assistance Agency v. Hoh*, No. 2:14-CV-00748, 2016 WL 815287, at *3 (S.D.W. Va. Feb. 29, 2016).

### III.    Discussion

EPA primarily seeks reconsideration of the Order to supplement because the Order, according to EPA, is "premised on a clear error of law." Reply at 3 (internal quotation omitted). More specifically, EPA contends the Court applied an inapplicable APA framework to Plaintiffs' motion to supplement, and the Court ordered supplementation based on incorrect assumptions that EPA made certain judicially-reviewable, official administrative findings and decisions. *Id.* at 1–2. Additionally, EPA believes the necessity of supplementing the administrative record has been rendered moot by recent events. If reconsideration is denied, EPA asks the Court to revise the scope of the required supplementation and to grant EPA more time to comply with the Order. The Court considers each theory and request in turn.

### A.    The Standard of Review for CWA Citizen Suits is Found in the APA

EPA insists the Court committed an error of law in its Order to supplement by applying APA standards and principles to decide Plaintiffs' Motion to supplement. Instead of applying APA standards, the Court should have, according to EPA, applied a "framework" specifically for CWA actual and constructive submission claims under 33 U.S.C. § 1313(d)(2) to decide if the administrative record required additional materials. Second, EPA argues the Court incorrectly assumed EPA made certain judicially-reviewable, official administrative findings and decisions, and based on this incorrect assumption, determined the administrative record required supplementation. Upon reconsideration, the Court finds it committed no error of law. The Order to supplement applied the correct legal standard for deciding Plaintiffs' Motion to supplement, and it made no erroneous assumptions about reviewable, formal administrative findings or decisions.

First, EPA insists the Court applied an inapplicable APA "framework" and legal standard for deciding Plaintiffs' Motion to supplement the administrative record related to Plaintiffs' CWA

claims. As made clear below, the Court finds no basis in law for EPA's distinction between administrative records in APA and CWA cases. Questions concerning an administrative record's sufficiency for judicial review require the reviewing court to first determine the standard of review. The APA provides the standard of review in CWA citizen suits, and therefore, also the standard for deciding a motion to supplement the administrative record in such a suit.

The Fourth Circuit has held, without discussion, the CWA does not establish the standard for judicial review of EPA determinations, and the appropriate standard is set forth in the APA, 5 U.S.C. § 701, *et seq. See Nat'l Wildlife Fed'n v. Hanson*, 859 F.2d 313, 316 (4th Cir. 1988) (holding district court properly applied APA to determine whether attorney's fees should be awarded on CWA claim); *see also Am. Canoe Ass'n, Inc. v. EPA*, 46 F. Supp. 2d 473, 476 (E.D. Va. 1999) ("*Hanson* [] supports the conclusion that the CWA [] citizen suit provision[] operate[s] in conjunction with the APA's standards and procedures for administrative review). At least one other circuit agrees in principle with the Fourth. In *Newton County Wildlife Association v. Rogers*, the Eighth Circuit, after observing the CWA citizen suit provision provides for judicial review but sets no standard for review, held the scope of judicial review of EPA determinations under the CWA is determined by the APA. *Newton Cty Wildlife Ass'n v. Rogers*, 141 F.3d 803, 808 (8th Cir. 1998).

Another federal court within the Fourth Circuit has held the APA applies the standard for judicial review in CWA citizen suits. *Am. Canoe Ass'n*, 46 F. Supp. 2d at 473. In *American Canoe Association*, plaintiffs brought a CWA citizen suit alleging, in part, that EPA failed to establish certain TMDLs for some Virginia waterbodies. *Id.* at 474–75. Plaintiffs sought discovery beyond the administrative record based on the idea that the APA and its requirements had no relevance to CWA citizen suits. *Id.* at 475. EPA moved for a protective order preventing such discovery. *Id.* The district court, looking to *Hanson* and authority from other circuits, ruled the standard of review

-6-

in CWA citizen suits is set by the APA, which limits judicial review to the administrative record unless certain circumstances exist. *Id.* at 477. With guidance from the D.C. Circuit, the court found "[i]n the absence of explicit statutory direction to the contrary, APA procedures and standards govern review of agency action challenged pursuant to [CWA] citizen suits." *Id.*

At least one other federal court within this district has applied APA standards for deciding a motion to supplement the administrative record in a CWA dispute. *See Ohio Valley Envtl. Coal. v. Whitman*, No. 3:02-0059, 2003 WL 43377, at *1 (S.D.W. Va. Jan. 6, 2003). In *Whitman*, several environmentalist groups challenged EPA's approval of West Virginia's anti-degradation plan promulgated under the CWA. *Id.*[5] After EPA submitted a purportedly complete administrative record, plaintiffs filed a motion to supplement, claiming the record was missing certain documents plaintiffs obtained through a Freedom of Information Act request. *Id.* The district court, Judge Goodwin, looked to APA principles to determine the scope of review and whether the record was complete. *Id.* at *1–2. Judge Goodwin found a complete administrative record in that CWA dispute consisted of all materials directly or indirectly considered by the agency in making the challenged decision. *Id.* at *1. Applying the APA's standard for a complete administrative record, Judge Goodwin held that supplementation was warranted as to documents EPA should have considered during the CWA approval process, which included communications between EPA and WVDEP during the time-period when the State formed its anti-degradation plan. *Id.* at *6. The CWA approval process, Judge Goodwin observed, is "one of initial proposals, comments, compromise, revisions, and final drafts, and the materials produced in this process are typically part of the administrative record." *Id.* at *5.

---

[5] The CWA's process for creating state anti-degradation plans, similar to the CWA's process for crafting TMDLs, requires the state to submit its plan to EPA for EPA's approval. *See Whitman*, 2003 WL 43377, at *4.

Even more closely related to the instant dispute, a federal district court in Washington has held the scope of judicial review in a CWA constructive submission citizen suit is determined using APA standards. *Sierra Club v. McLerran*, No. 11-1759RSL, 2012 WL 5449681, at *1 (W.D. Wash. Nov. 6, 2012). In *McLerran*, environmentalists sued EPA for failing to perform its non-discretionary duty under the CWA to review TMDLs constructively submitted by Washington State. *Id.* In resolving plaintiffs' motion for de novo review and discovery, the district court found the CWA citizen suit provision offers no guidance as to the scope of judicial review of the administrative record, *id.*, and district courts wield great discretion in setting the scope of administrative review in citizen suits, *id.* at 2. The court exercised its discretion and concluded the APA provided the proper standard for determining the scope of judicial review. *Id.* Accordingly, the court reviewed EPA's alleged violation of the CWA under APA § 706(1), *id.*, which provides "court[s] shall review the whole record or those parts of it cited by a party," 5 U.S.C. § 706(1). The whole administrative record, the court concluded, "consists of all documents and materials directly or indirectly considered by agency decision-makers and includes evidence contrary to the agency's position." *Id.* (internal quotation and citation omitted).

In its briefing, EPA fails to point to any case in the Fourth Circuit holding APA standards are inapplicable to determine the scope of judicial review and principles of administrative law in CWA citizen suits.[6] On the contrary, two federal courts in the Fourth Circuit and another sitting

---

[6] EPA relies exclusively on *San Francisco BayKeeper v. Whitman*, 297 F.3d 877 (9th Cir. 2002) to support its theory that a dichotomy exists between CWA and APA standards and principles of review. But in *San Francisco BayKeeper*, the Ninth Circuit did not address the standard of review issue that the Motion for Reconsideration brings before this Court. Instead, the Ninth Circuit was dealing with the merits of a constructive submission claim. *Id.* The Ninth Circuit found the constructive submission theory inapplicable because the state had submitted some TMDLs, *id.* at 883, and that EPA's non-discretionary duty to establish TMDLs was, therefore, not triggered, *id.* at 885. After resolving the merits of the CWA claims, the Ninth Circuit asked if the district court should have applied APA § 706(1)—which authorizes courts to compel agency action

-8-

in Washington State have applied the APA to decide the sufficiency of an administrative record and scope of judicial review in CWA citizen suits alleging EPA violated CWA provisions related to approving or denying state submissions. *See Am. Canoe Ass'n*, 46 F. Supp. 2d at 473; *Whitman*, 2003 WL 43377, at *1–2, 6; *McLerran*, 2012 WL 5449681, at 2. Looking to the APA's standards in deciding the sufficiency of an administrative record in any CWA dispute is proper because, as the Fourth Circuit has noted, the CWA itself does not provide a standard for judicial review of EPA's decisions and actions pursuant to the CWA. *Hanson*, 859 F.2d at 316.

The Court will now apply the APA's standard of review and administrative law principles to explain in greater detail the rationale behind the Order to supplement. In Claims I and II, brought under the CWA, Plaintiffs challenge EPA's actions as well as its inactions. Regardless of the statute applied, principles of administrative law do not change; agencies either act or do not act. Individuals challenge either an agency's action, its inaction, or both. *See* Eric Biber, *Two Sides of the Same Coin: Judicial Review of Administrative Agency Action and Inaction*, 26 Va. Envtl. L.J. 461 (2008) (arguing dichotomy between review of agency action and inaction should be collapsed into review of agency decisions about allocation of agency resources). Claims I and II attack EPA's actions: specifically, its approval of West Virginia's § 303(d) Lists for various waterbodies, despite West Virginia's alleged failure to establish ionic toxicity TMDLs for those waterbodies. Am. Compl. ¶¶ 71–82. Claims I and II also challenge EPA's inaction, i.e., its alleged unreasonable delay: more precisely, EPA's failing to timely disapprove of several § 303(d) Lists based on West Virginia's failure to establish ionic toxicity TMDLs for certain waterbodies. *Id.* ¶¶ 60–70. Thus,

---

unreasonably delayed—and compelled EPA to set TMDLs. After observing that an unreasonable delay claim can only be brought where the agency has a duty to act, and that EPA had no duty to act under the CWA, the Ninth Circuit ruled plaintiffs' unreasonable delay claim failed. *Id.* at 886. Nothing in *San Francisco BayKeeper* makes the Court reconsider its conclusion that EPA must supplement the administrative record in this case as required by the Order to supplement.

Plaintiffs challenge EPA's actions and inactions. These challenged actions and inactions have translated into further inaction that Plaintiffs argue violated EPA's non-discretionary duty under the CWA, namely EPA's duty to establish ionic toxicity TMDLs after West Virginia allegedly failed to do so.[7]

      EPA has defended its actions and inactions, in part, by referring to deadlines and efforts WVDEP has made toward establishing a methodology that would enable the State to set ionic toxicity TMDLs. During summary judgment briefing, EPA added WVDEP's 2014 § 303(d) List to the administrative record as evidence that the State's efforts made the State CWA compliant and that EPA's duty was therefore not triggered. In response, Plaintiffs, throughout the Motion to supplement, pointed out the administrative record was silent on several matters related to WVDEP's deadlines and efforts. Accordingly, the Court required EPA to add to the administrative record materials EPA relied upon in forming several conclusions that were necessary precursors to EPA's alleged failure to promulgate TMDLs for ionically impaired streams in West Virginia.[8] As discussed more below, these preliminary conclusions are not the final actions and inactions

---

[7] There are two forms of agency "inaction." 4 Admin. L. & Prac. § 11:51 (3d ed. West 2016). In the first type, an agency has actively decided to not take some sort of action. For instance, the agency considers but then decides to not initiate an enforcement action or conduct rulemaking. *Id.* This first type of inaction is sometimes called a refusal to act. *Id.* In the second type of inaction, the agency has not considered taking any action or official position with regard to some measure. *Id.* In such circumstance, the agency has neither acted nor refused to act, leading to this form of inaction sometimes being referred to as "true" inaction. Based on Claims I and II of Plaintiff's Amended Complaint, and the CWA's 30-day deadline for EPA to approve or deny state submissions, *see* 33 U.S.C. § 1313(d)(2), Plaintiffs allege EPA committed the first sort of inaction. When WVDEP submitted its 303(d) List to EPA, the CWA required EPA to consider and decide whether or not to approve or deny the state's submission. The CWA's requirement that EPA approve or deny state submissions within thirty days precludes EPA from arguing the second sort of inaction is at issue in this case.

[8] Those decisions were: (1) WVDEP's duty under the CWA to submit ionic toxicity TMDLs was satisfied by the state agency's deadlines for developing ionic toxicity TMDLs; (2) development of that methodology is "well underway"; and (3) EPA could rely on WVDEP's representations in order to meet EPA's own duties under the CWA.

challenged in Claims I and II. Instead, these preliminary conclusions must have been part of the agency's decisionmaking process that is being reviewed in Claims I and II. The whole administrative record related to Claims I and II consists of "all documents and materials directly or indirectly considered by agency decision-makers," including evidence contrary to the agency's position, when EPA approved or delayed disapproving West Virginia's § 303(d) Lists at issue. *See McLerran*, 2012 WL 5449681, at 2. Furthermore, the CWA approval process consists "of initial proposals, comments, compromise, revisions, and final drafts, and the materials produced in this process are typically part of the administrative record." *Whitman*, 2003 WL 43377, at *5. Based on this legal analysis and the facts alleged in support of Claims I and II, the Court finds the Order to supplement appropriately applied the APA and principles of administrative law in deciding Plaintiffs' Motion to supplement.

Second, EPA argues the Court erred by assuming that EPA made certain judicially-reviewable, official administrative findings and decisions and ordering supplementation based on that assumption. However, nowhere in the Order to supplement did the Court assume EPA made formal findings subject to judicial review. *See Ohio Valley Envtl. Coal.*, 2016 WL 2733137, at *n.6 ("There is no indication EPA made any findings simultaneously with its challenged decisions."). Instead, the Court determined EPA must have made certain preliminary conclusions—formal or not, reviewable or not—that preceded the agency actions and inactions challenged in Claims I and II.[9] At bottom, Claims I and II challenge EPA's failure to promulgate ionic toxicity TMDLs for streams WVDEP listed as ionically impaired without setting TMDLs for ionic toxicity. Because EPA itself did not establish TMDLs, the Court assumed EPA must have

---

[9] The Order to supplement loosely referred to these forerunner conclusions as decisions, but carefully avoided calling them judicially-reviewable, formal agency findings or decisions.

concluded that WVDEP's various submissions did not constitute a submission of no TMDLs for the impaired streams. To defend Claims I and II without either the state or federal agency having established TMDLs for impaired streams, EPA must have concluded, formally or not, that WVDEP's submissions fulfilled the state agency's CWA duty to establish TMDLs for impaired streams such that EPA's CWA duty to promulgate TMDLs for impaired streams did not arise. This assumption—that EPA concluded WVDEP's submission fulfilled the state agency's duties and avoided triggering EPA's concomitant duty—is only for the purpose of deciding the motion to supplement,[10] and is so basic to this dispute that the Court cannot, without reviewing arguments and evidence on the merits of this case, conceive of EPA's opposition to Claims I and II without EPA conceding that it made some preliminary conclusions that WVDEP's CWA duty was fulfilled, at least partially, and that EPA's CWA duty was not triggered. EPA must have internally made these preliminary conclusions, otherwise, looking to the CWA's relevant mandates to federal and state agencies, EPA would have promulgated ionic toxicity TMDLs for the streams listed as ionically impaired. Even if EPA's preliminary conclusions are themselves not subject to review, information supporting or contradicting these conclusions: (1) is lacking in the current administrative record; (2) constitutes background information that must be considered when reviewing EPA's alleged inaction; and (3) enables the Court to review EPA's actions and inactions challenged in claims I and II. *See, e.g., Brandon v. Nat'l Credit Union Ass'n*, 115 F. Supp. 3d 678, 684 (E.D. Va. 2015), *appeal dismissed*, 631 Fed. Appx. 176 (4th Cir. 2016) (citations omitted) (supplementing an agency's proffered administrative record is appropriate when: it appears the

---

[10] Clarifying that findings and discussions in the Order to supplement and this Order on Reconsideration are only for purposes of the supplementation issue alleviates the concerns mentioned in EPA's Motion for Reconsideration regarding the Court's deciding certain merits issues in these Orders. *See* Mot. Recons. at 14.

agency relied on documents or materials not in the record; background information is needed to determine whether the agency considered all the relevant factors, or to permit explanation or clarification of technical terms or subject matter; or the agency so failed to explain administrative action that it frustrates judicial review).

In sum, the Court finds no error of law in its Order to supplement. Applying an APA standard of review to decide the sufficiency of the administrative record pertaining to Claims I and II was appropriate. Furthermore, the Order to supplement was not based on assumptions that EPA made judicially-reviewable, formal findings. Instead, the preliminary conclusions that formed the basis for ordering supplementation need not be formal or judicially reviewable in order for these conclusions to warrant supplementing the record.

B.      **Mootness of Supplementing the Record**

EPA also contends part of the Motion to supplement is now moot, making it inappropriate to have EPA add certain materials to the record. Mot. Recons. at 10. More specifically, Plaintiffs' Motion to supplement asked for documents EPA relied upon in concluding—and arguing based on that conclusion—that WVDEP's development of a new assessment methodology for setting ionic toxicity TMDLs was "well underway." Based on references to the administrative record in the Parties' briefing for the Motion to supplement, the Court found the administrative record lacked support for EPA's conclusion that WVDEP's efforts were well underway. Now, EPA claims that since the Order to supplement, WVDEP has published the promised methodology, which makes it no longer necessary to supplement the administrative record with materials EPA relied upon in forming its conclusion about WVDEP's efforts.

Despite this recent development, the administrative record remains incomplete with regard to information EPA had, at the time of its actions and inactions challenged in Claims I and II, about

WVDEP's efforts to establish a new methodology. The question before the Court is not: When will WVDEP publish its promised methodology for establishing TMDLs? Instead, the Court must determine whether or not EPA had a non-discretionary duty to establish TMDLs at the time of its actions and inactions on WVDEP's various submissions. To answer that question, the Court must have an administrative record that contains the information EPA had, at the time of the actions and inactions challenged in Claims I and II, about WVDEP's efforts to develop a methodology. Accordingly, developments subsequent to EPA's actions and inactions are not properly part of the administrative record, making it inappropriate in this case for the Court to consider the State's later-published methodology. Instead, the administrative record must contain those documents and materials EPA relied upon to conclude that WVDEP's efforts to establish a new methodology were sufficient to alleviate WVDEP and EPA of the burden of establishing TMDLs, either at the time of WVDEP's submissions to EPA or within sixty days after—the CWA deadline for EPA to establish TMDLs after it disapproves a state's § 303(d) and TMDL lists, *see* 33 U.S.C. § 1313(d)(2).

Again, the analysis in this Order on reconsideration and the Order to supplement is provisional. The analysis in both Orders is neither meant to define the issues for the Parties nor tie the Court's hands in deciding the cross-motions for summary judgment. However, the limited discussion above of the merits of Claims I and II is necessary to explain in greater detail the reasoning underlying the supplementation Order.

### C.    Scope of Supplementation Required

Alternatively, EPA asks the Court to reconsider the scope of supplementation required by the Order to supplement, arguing the scope ordered presents several concerns including an unworkable standard. Plaintiffs capitalize on the Motion for Reconsideration, and EPA's request

to vary the scope of supplementation required, by proposing their own definition of what materials should be added to the administrative record. Neither Party's invitation to adjust the scope of supplementation is warranted.

The Court declines EPA's request to adjust the scope of supplementation required by the Order to supplement. The scope of supplementation ordered is no greater than necessary for the Court to determine whether EPA violated the CWA as Claims I and II allege. The language of the required supplementation tracks the agency decisionmaking process the Court must review to uphold or reverse the agency actions and inactions alleged in Claims I and II. Furthermore, the contours of supplementation this Court ordered are much narrower than other orders to supplement. *See, e.g.*, *Nw. Coal. for Alternatives to Pesticides v. EPA*, 920 F. Supp. 2d 1168, 1176 (W.D. Wash. 2013) (providing only one limit on required supplementation—evidence relevant to whether relief should be granted). And for several other reasons, neither of the Party's proposed supplementation schemes is appropriately calculated to aid the Court in reviewing EPA's actions and inactions alleged in Claims I and II. Accordingly, the Court will not revise the scope of supplementation required by the May 2016 Order.[11]

Although the Court will not adjust the scope of supplementation required, it will further explain what that scope does and does not entail. None of the three categories of required supplemental materials [12] entails documents containing only discussions between EPA and WVDEP on technical or scientific matters related to the new methodology. Scientific and technical

---

[11]  The Court's decision to not revise the scope of supplementation required by the May 2016 Order does not prevent the Court from requiring additional supplementation at a later time.

[12]  For ease of reference, EPA must add to the administrative record materials it relied upon in deciding: (1) WVDEP's CWA duty to submit ionic toxicity TMDLs was satisfied by the state agency's deadlines for developing ionic toxicity TMDLs submitted in its § 303(d) Lists; (2) development of that methodology was "well underway"; and (3) EPA could rely on WVDEP's representations in submissions to EPA in order to meet EPA's own duties under the CWA.

discussions, on their own, do not tell the Court how EPA concluded the State's deadlines and efforts could meet the State and Federal agencies' respective CWA duties. Accordingly, pursuant to the Order to supplement, EPA should not submit documents containing technical or scientific data but lacking any reference to the State's schedule or efforts to establish a methodology or TMDLs. Supplementing the record as required should gather almost no technical or scientific discussions pertaining to the new methodology. Instead, the second category of supplemental materials, those pertaining to EPA's assessment of WVDEP's efforts to develop a methodology and comply with the CWA, entails communications and discussions between the two agencies, at the time of the actions and inactions challenged in Claims I and II, regarding WVDEP's deadlines and efforts to develop the promised methodology.

Nor is the Court requiring EPA to submit documents reflecting the agency's internal deliberations. Judicial review of agency action or inaction is based on the reasons given by the agency and the information considered by the agency in the course of the decision, not the agency's internal decision-making process. Accordingly, internal reports, memoranda, and e-mails from EPA staff to other EPA staff reflecting the agency's deliberations are not included in the documents that must supplement the administrative record. To be clear, this guidance on the scope of supplementation required is not intended to narrow the scope of the Order to supplement.

Lastly, the Court is aware that EPA's records supporting its preliminary conclusions and inactions may be sparse. Plaintiffs challenge EPA's informal decisionmaking process, not its formal adjudication or rulemaking. *See* 33 U.S.C. § 1313(d)(2) (not explicitly requiring administrator to make its approval decisions "on the record"). Generally, informal decisionmaking yields fewer records for review than formal decisionmaking. 3 Admin. L. & Prac. § 10:2 (3d ed. West 2016) ("The administrative decisionmaker as well as the court must deal with the same

deficiencies in the information gathering process of informal procedures."). Additionally, Claims I and II challenge, in part, EPA's inactions, and agencies tend to keep fewer records justifying their inactions. *See San Francisco BayKeeper*, 297 F.3d at 886 ("[W]hen a court is asked to review agency inaction before the agency has made a final decision, there is often no official statement of the agency's justification for its actions or inactions.").

> ### D.    Time to Comply with the Order to Supplement

In its Motion for Extension of Time, EPA asks to extend the deadline for EPA to supplement the administrative until seven days after the Court rules on the instant Motion for Reconsideration. The Court **GRANTS** EPA's Motion for Extension of Time. EPA must supplement the administrative record no later than June 24, 2016.

> ### IV.    Conclusion

For the above reasons, the Court **DENIES** EPA's Motion for Reconsideration; clarifies the scope of the Order to supplement; and to the extent stated earlier, **GRANTS** EPA's Motion for Extension of Time. EPA must supplement the administrative record in accordance with the Order to supplement no later than June 24, 2016. Additionally, the Court **AMENDS** the briefing schedule for the cross-summary motions as follows: Plaintiffs' surreply of ten pages or less is now due within one week after EPA supplements the administrative record; if Plaintiffs file a surreply, EPA may respond by filing a memorandum no longer than ten pages within one week after Plaintiffs' surreply; on or before July 7, 2016, EPA shall file the Joint Appendix; on or before July 8, 2016, the parties shall file final versions of their briefs with citations to the Joint Appendix.

The Court **DIRECTS** the Clerk to send a copy of this Opinion and Order to counsel of record and any unrepresented parties.

ENTER:       June 17, 2016

-17-

ROBERT C. CHAMBERS, CHIEF JUDGE