IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

OHIO VALLEY ENVIRONMENTAL
COALITION, INC.,
SIERRA CLUB,
WEST VIRGINIA HIGHLANDS
CONSERVANCY, INC. and
VIRGINIA RIVERS COALITION,

Plaintiffs,

v.   CIVIL ACTION NO.   3:15-0271

ANDREW WHEELER, Administrator,
United States Environmental Protection Agency and
CECIL RODRIGUES, Regional Administrator,
United States Environmental Protection Agency,
Region III,

Defendants.

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Plaintiffs', Ohio Valley Environmental Coalition, Inc., Sierra Club, West Virginia Highlands Conservancy, and Virginia Rivers Coalition, Motion for an Award of Attorney's Fees and Expenses. ECF No. 114. For the foregoing reasons, the Court **GRANTS, in part,** insofar as Plaintiffs are awarded attorney's fees and costs, and **HOLDS IN ABEYANCE, in part,** as to the calculation of those fees and costs.

### I. BACKGROUND

Plaintiffs brought suit against the Environmental Protection Agency ("EPA"), claiming it had neglected its duty pursuant to the Clean Water Act ("CWA") to address the West Virginia Department of Environmental Protection's ("WVDEP") refusal to produce Total Maximum Daily Load ("TMDL") limits for streams designated biologically impaired.

As more fully set out in the Court's February 14, 2017 Memorandum Opinion and Order, (ECF No. 87), the CWA requires states to develop water quality standards ("WQS"), identify waterbodies that are "impaired" under the WQS, and create a TMDL for each offending body of water. 33 U.S.C. § 1313(d)(1)(C); 40 C.F.R. § 130.7(c)(1). TMDLs "establish[ ] the maximum daily discharge of pollutants into a waterway" from all sources. *Hayes v. Whitman*, 264 F.3d 1017, 1021 (10th Cir. 2001) (citing *Scott v. City of Hammond*, 741 F.2d 992, 996 (7th Cir. 1984)). The state must then submit those TMDLs to EPA for approval within thirty days. *Id.* If EPA disapproves a TMDL, EPA must then produce that TMDL within thirty days of disapproval. 33 U.S.C. § 1313(d)(2). Where a "state's actions clearly and unambiguously express a decision to submit no TMDL for a particular impaired waterbody," *Hayes*, 264 F.3d at 1024, known as a "constructive submission," EPA must approve or disapprove of the absence within thirty days of the state's failure. § 1313(d)(2). Were it to disapprove the missing TMDL, meaning EPA believed a TMDL to be necessary, EPA is obliged to produce the TMDL within thirty days. *Id.* If it approves the constructive submission, EPA need not take any further action.

In 2012, the West Virginia Legislature passed legislation to require WVDEP to develop a new methodology to determine which bodies of water are considered biologically impaired pursuant to the state's narrative WQS. Letter from Randy C. Huffman, Cabinet Sec'y, WVDEP, to Jon M. Capacasa, Dir., Water Prot. Div., EPA Region III (Apr. 6, 2012), J.A. 3298 [hereinafter Huffman Letter]. WVDEP interpreted the 2012 legislation, known as SB 562, to prohibit WVDEP from developing TMDLs to address streams that were deemed to be biologically impaired as indicated by a failing West Virginia Stream Condition Index ("WVSCI") score until it could develop a new methodology. Huffman Letter, J.A. 3298. EPA, conversely, does not interpret SB 562 to preclude WVDEP from developing TMDLs for biologically impaired streams. Draft TMDL

for Selected Streams in the Monongahela River Watershed, W. Va. EPA Comments—Oct. 24, 2013, J.A. 188.

Plaintiffs filed claims against EPA pursuant to the citizen suit provision of the CWA, 33 U.S.C. § 1365(a)(2), arguing that WVDEP's refusal to develop TMDLs for biological impairment until it developed a new testing methodology was a constructive submission which triggered EPA's duty to approve or disapprove of the submission of no TMDLs for biologically impaired bodies of water. *Second Am. Compl.*, ECF No. 78. The Court agreed and granted summary judgment in favor of Plaintiffs. *Mem. Op. & Order*, ECF No. 87. The Court ordered EPA to "approve or disapprove WVDEP's constructive submission of no TMDLs for all biologically impaired bodies of water for which no TMDL has been developed to address that impairment within thirty days." *Id.* EPA appealed and the Fourth Circuit denied EPA's motion for stay pending appeal on May 30, 2017. *Order of 4th Cir.*, p. 1, ECF No. 106.

On June 13, 2017, EPA acted under § 303(d)(2) of the CWA, (33 U.S.C. § 1313(d), and conditionally approved WVDEP's constructive submission of no TMDLs. *EPA Decision Part One*, at 3, ECF No. 107-1. In its decision, EPA stated it would "not take the action required by the district court (to approve or disapprove 573 "no TMDLs") if it not had been ordered to do so." *Id.* The "most significant" basis for accepting the protracted delay on the part of WVDEP was the Memorandum of Agreement ("MOA") between EPA and WVDEP, which established a schedule to develop TMDLs "regardless of the availability of a new biological assessment methodology." *Id.* The MOA was an outgrowth of Plaintiffs' suit, as it was "[i]n response to [this C]ourt's finding that WVDEP has 'constructively submitted' 'no' TMDLs addressing the biological impairment in the Attachment 1 waterbodies, EPA worked with WVDEP to establish through an MOA a reasonable and expeditious schedule for the development of the TMDLs." *Id*. at 6.

On appeal, the Fourth Circuit reversed the order of this Court and found that even if the doctrine of constructive submission applied,[1] it was not satisfied here. *Op. of 4th Cir.*, at 12, ECF No. 108. The circuit court's rationale was founded on WVDEP's "good-faith efforts to comply with SB 562, *and* because West Virginia has a credible plan in concert with the EPA to produce ionic toxicity TMDLs[.]" *Id.* (emphasis in original). The credible plan referenced therein is the MOA, which EPA further assured it will continue to implement beyond its appeal in this matter. *Id.* at 11–12; *see also id.* at n. 3 (memorializing EPA's affirmation the MOA was the basis for EPA's conditional approval, which in turn was an outgrowth of this Court's order). After denying Plaintiffs' petition for panel rehearing, the Fourth Circuit issued its mandate on August 27, 2018. ECF No. 113. Plaintiffs timely filed their motion for attorney's fees and costs. ECF No. 114.

## II. LEGAL STANDARD

Under the CWA, a citizen can sue "where there is alleged a failure of the Administrator to perform any act or duty under this chapter which is not discretionary[.]" 33 U.S.C. § 1365(a)(2). A court "may award costs of litigation (including reasonable attorney and expert witness fees) to any prevailing or substantially prevailing party, whenever the court determines such award is appropriate." 33 U.S.C. § 1365(d).

## III. DISCUSSION

Plaintiffs argue they are "substantially prevailing" parties within the meaning of the CWA and an award of fees and costs are appropriate here. *Mem. Supp. Mot. Att'y Fees*, ECF No. 115. Defendants contest that Plaintiffs must have received an enforceable judgment or court-ordered decree, as required by the United States Supreme Court in *Buckhannon*. *Resp. to Mot. Att'y Fees*,

---

[1] The circuit court declined to find whether or not the constructive submission doctrine applied. *4CCA Op.*, at 12, ECF No. 108.

p. 1, ECF No. 117 (citing *Buckhannon Board & Care Home, Inc. v. W. Va. Dep't of Health & Hum. Res.*, 532 U.S. 598 (2001)). Defendants further claim that even if *Buckhannon* is not applicable, fees are not "appropriate" in this case. *Id.* at 16.

*A. Categories of Fee-Shifting Statutes*

Under the "American Rule," "[e]ach litigant pays his own attorney's fees, win or lose, unless a statute or contract provides otherwise." *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 253 (2010) (citing *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 683 (1983)). The Supreme Court has clarified that there are, at least, three categories for fee-shifting provisions.

> Statutory changes to this [American] rule take various forms. Most fee-shifting provisions permit a court to award attorney's fees only to a "prevailing party." Others permit a "substantially prevailing" party or a "successful" litigant to obtain fees. Still others authorize district courts to award attorney's fees where "appropriate," or simply vest district courts with "discretion" to award fees.

*Id.*

Defendants' contention relies heavily on the notion that the Supreme Court's decision in *Buckhannon* applies to the CWA. To support this, they posit there are only two categories of fee-shifting statutes—"prevailing" and "where appropriate"—and argue that because the phrase "substantially prevailing party" appears in the CWA, it must be categorized as a "prevailing party" statute and bound by *Buckhannon*. *Defs.' Resp.*, at 6. The Court disagrees. This interpretation misreads the plain language of the decision in *Hardt*, where "substantially prevailing" is distinctly parsed out from "prevailing party" statutes.[2] *Hardt*, 463 U.S. at 683.

---

[2] In support, Defendants cite an Eleventh Circuit case. *Id.* at 6 (citing *Loggerhead Turtle v. Cty. Council of Volusia Cty., Fla.*, 307 F.3d 1318 (11th Cir. 2002). In addition to overlooking the "where appropriate" language of the CWA, Defendants are undercut by the fact that the Eleventh Circuit explicitly recognizes the catalyst theory under the CWA. *Black Warrior Riverkeeper, Inc. v. Metro Recycling Inc.*, 613 F. App'x 877, 878–79 (11th Cir. 2015) ("Since [*Buckhannon*], we have held that the catalyst theory is still viable in Clean Water Act cases.").

*B. Applicability of Buckhannon*

In *Hardt*, the Supreme Court refuted the application of *Buckhannon* as a limitation on awards of attorney's fees under the Employee Retirement Income Security Act of 1974 ("ERISA"), which allows for a such an award at the court's "discretion." 29 U.S.C. §1132(g)(1). In overruling the Fourth Circuit's interpretation to the contrary, the Supreme Court stated that "prevailing party" precedents do not govern where a fee-shifting statute is not limited to a "prevailing party." *Hardt*, 560 U.S. at 253. Unlike the CWA, the fee-shifting statute under ERISA does not contain the phrase "prevailing party." However, it is apparent that the Court intended to distinguish "prevailing" from "substantially prevailing" statutes and limit the application of *Buckhannon* to those statutes where fees are *only* available to the former category. *See id*. (citing *Gross v. FBL Fin. Serv. Inc.*, 557 U.S. 167, 174 (2009) ("cautioning courts 'conducting statutory interpretation . . . not to apply rules applicable under one statute to a different statute without careful and critical examination'") (internal quotes omitted)). As such, the CWA is not limited by *Buckhannon*.[3]

---

[3] Defendants point to other cases which *have* applied *Buckhannon* to the attorney's fees provision of the CWA. *Defs.' Resp.*, at 7–10. However, the cited examples are non-binding, unpersuasive, and—in one instance—misstated. The first three of these examples predate the Supreme Court's guidance in *Hardt* and improvidently group together "prevailing party" and "substantially prevailing" categories. *Id.* at 7–8 (citing *Kasza v. Whitman*, 325 F.3d 1178 (9th Cir. 2003); *Sierra Club v. City of Little Rock*, 351 F.3d 840 (8th Cir. 2003); *Envtl. Conservation Org. v. City of Dallas*, 307 F. App'x 781, 784–85 (5th Cir. 2008) (holding plaintiff was not a catalyst, not that the catalyst theory did not apply).

Defendants further cites *Sanitary Bd. of City of Charleston, W. Virginia v. Pruitt*, 336 F. Supp. 3d 615 (S.D. W. Va. Oct. 4, 2018) (Goodwin, J.) and *Ohio Valley Envtl. Coalition v. Fola Coal Co., LLC*, No. CV 2:13-5006, 2016 WL 8252928 (S.D. W. Va. Aug. 30, 2016) (Chambers, C.J.). *Id.* at 8. These cases did not benefit from the present argument and are not binding on the Court. *Camreta v. Greene*, 563 U.S. 692, n.4 (2011) ("A decision of a federal district court judge is not binding precedent in . . . the same judicial district, or even upon the same judge in a different case.") (internal quotations omitted).

*C. "Substantially Prevailing" Parties*

Unlike the term "prevailing party," a definition for "substantially prevailing" party is absent from Black's Law Dictionary. Given this absence and no discernable consensus in the

---

While Defendants state the opinion in *Sanitary Bd.* "thoroughly examined the relevant statutory text and case law and properly concluded that that catalyst theory is inapplicable to the CWA," the Court disagrees. *Defs.' Resp.*, at 8. In relevant part:

> Sanitary Board argues further that *Buckhannon* should not apply to statutes such as the CWA that permit a court to award fees not only to a prevailing party but also to a "*substantially* prevailing party." This assertion also lacks merit. The Fourth Circuit has held that "[t]he term 'prevailing party,' as used in . . . fee-shifting provisions is a 'legal term of art,' and is 'interpreted . . . consistently'—that is, without distinctions based on the particular statutory context in which it appears." *Smyth ex rel. Smyth v. Rivero*, 282 F.3d 268, 274 (4th Cir. 2002) (citation omitted) . . . Given this "clear meaning" of "prevailing party," it follows that a plaintiff cannot be a "substantially prevailing party" without procuring the same. *See also Smyth*, 282 F.3d at 274 (requiring consistent interpretation of the term "prevailing party" regardless of statutory context).

*Sanitary Bd.*, 336 F. Supp. 3d at 619.

Contrary to Judge Goodwin's assertion, a "substantially prevailing" party is distinct from a "prevailing party." *Smyth* interpreted a statute only with "prevailing party" language, (42 U.S.C. § 1988), and is thus not analogous to the CWA. Furthermore, the quote from *Smyth* reasserts "prevailing party" as a "legal term of art" by citing to *Buckhannon*. *Smyth* 282 F.3d at 274 (citing *Buckhannon*, 121 S.Ct. at 1839). The Supreme Court supports this finding with a citation to the term "prevailing party" in Black's Law Dictionary. *Buckhannon*, 532 U.S. at 603 (citing BLACK'S LAW DICTIONARY 1145 (7th ed.1999)). The same cannot be said about the term "substantially prevailing."

Judge Goodwin's quote from *Smyth* goes on to incorporate footnote four of *Buckhannon*. *Smyth* 282 F.3d at 274. Footnote four cites to the Supreme Court's general citation to Justice Brennan's appendix of cases in his dissent in *Marek v. Chesney*. *Buckhannon*, 532 U.S at 603, n.4 (citing 473 U.S. 1, 43–51 (1985)). Justice Brennan's appendix catalogues over one hundred fee-shifting statutes and is organized by the types of cost they authorize, not when those costs are available. Within footnote four is a citation to footnote seven of *Hensley v. Eckerhart. Id.* (citing 461 U.S. 424, 433, n.7 (1983)). The Court in *Hensley* only compares "prevailing party" statutes. 461 U.S. at 433, n.7. Thus, it would appear that *Smyth*—which itself predates the decision in *Hardt*—only applies to "prevailing party" statutes, as to interpret otherwise would improperly conflate "prevailing party" statutes with "substantially prevailing" statutes.

caselaw, there appears to be no set meaning for what constitutes a "substantially prevailing" party as a general term. However, the Fourth Circuit consistently holds that a party sufficiently prevails under the CWA when its suit causes an agency to perform a required function and advances the goals of the CWA, regardless of the ultimate disposition of the case.[4]

After the language of the CWA was amended,[5] adding that a party must be "prevailing or substantially prevailing" as a prerequisite,[6] the Fourth Circuit addressed the fee-shifting provision in *National Wildlife Federation v. Hanson*, 859 F.2d 313, 315, n.\* (4th Cir. 1988). There, the circuit court affirmed a district court's award of interim attorney's fees under the CWA. *Id*. at 315. The district court held the defendants—EPA and Army Corps of Engineers—failed to perform their statutory duties by not properly undertaking the necessary investigation before determining whether or not certain property qualified as wetlands. *Id.* The district court remanded to the Corps to make a proper determination and awarded fees and costs pursuant to § 1365(d). *Id.*

---

[4] Though the Court need not look to other statutes to discern how the Fourth Circuit interprets the fee-shifting statute of the CWA, doing so illustrates the permissibility of the catalyst theory's application. The Supreme Court has held "that similar attorney's fee provisions should be interpreted *pari passu*[.]" *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 691 (1983) (citing *Northcross v. Memphis Bd. of Ed.,* 412 U.S. 427 (1973)). In *Reinbold v. Evers*, the Fourth Circuit interpreted the fee-shifting statute under the Privacy Act by comparing it to that of the fee-shifting statute under the Freedom of Information Act, both using "substantially prevailing" language. *Reinbold v. Evers*, 187 F.3d 348, 362 (4th Cir. 1999) (citing 5 U.S.C. § 552a(g)(2)(B) ("Privacy Act"); 5 U.S.C. § 552(a)(4)(E) ("FOIA"). The standard for "substantially prevailed" under *Reinbold* is whether the plaintiff's lawsuit was "reasonably necessary and *substantially caused the requested* [*relief,*] . . . [*despite*] *the absence of a final judgment in his favor*[.]" *Id*. at 363 (emphasis added) (citations omitted).

[5] In 1987, Congress changed the attorney's fees provision from a "whenever appropriate" statute to its presently blended form. In doing so, the Senate Report accompanying the 1987 CWA amendments explained the addition of "prevailing or substantially prevailing" to the CWA fee-shifting provision is "not intended to preclude the awarding of costs to a partially prevailing party with respect to the issues on which that party has prevailed, if such an award is deemed appropriate by the court." S. REP. 100-144, Vol. 2 at 1454 (reprinting S. REP. 99-50 at 33).

[6] *Doe v. Chao*, 435 F.3d 492, 505–06 (4th Cir. 2006) ("Statutes that require a complainant to 'substantially prevail' in order to obtain costs and fees do so as a prerequisite to obtaining fees.")

On appeal, the defendants in *Hanson* argued that the plaintiffs would only "prevail" if the Corps determined the land was, in fact, "wetlands." *Id.* at 316. The Fourth Circuit found this argument unpersuasive because courts must "interpret 'prevailing' in light of the goals of the Clean Water Act, [otherwise] the legislative purpose in awarding fees will be frustrated." *Id*. "Whether or not the Corps and EPA ultimately determine that [the land in question] is wetlands, the [plaintiff] will still have served a key purpose of the citizen suit provision which is to ensure that the agencies fulfill their duties under the CWA responsibly." *Id.* at 317. Thus, the award of fees and costs was appropriate.

Though the matter in *Hanson* pre-dates *Buckhannon*, the Fourth Circuit reaffirmed its rationale in *Southern Alliance. For Clean Energy v. Duke Energy Carolinas, LLC*., 650 F.3d 401 (4th Cir. 2011). While interpreting the "whenever appropriate" language in the citizen suits provision of the Clean Air Act, 42 U.S.C. § 7604(d), the court stated there is "sufficient success to support attorneys' fees, for example, where an agency is ordered to carry out one of its regulatory duties such as adequately investigating complaints—regardless of the outcome of the investigation." *Id.* The Fourth Circuit went on to explain:

> Indeed, in *Hanson,* 859 F.2d 313, this Court affirmed an attorneys' fee award where the plaintiffs brought a citizen suit under the Clean Water Act, alleging that the U.S. Army Corps of Engineers failed to adequately evaluate whether a tract of land contained wetlands. *Id.* at 315–17. The district court directed the Corps to make a properly informed wetlands determination and awarded the plaintiffs fees. *Id.* This Court affirmed based on the plaintiffs' success in obtaining a remand ordering the Corps to undertake a proper investigation—regardless of the investigation's outcome. *Id.* at 317. And in *Ohio River Valley Envtl. Coal., Inc. v. Green Valley Coal Co.,* 511 F.3d 407 (4th Cir. 2007), this Court found attorneys' fees supported where a coal company took remedial action after environmental groups filed suit, even though the suit was ultimately voluntarily dismissed.

*Id*. at 406–07.

By reaffirming *Hanson* on the basis of the order to perform its statutory duty, and following it with the decision in *Green Valley Coal*, the court in *Southern Alliance* bolstered its rationale that fees and costs are available under the CWA, not on the ultimate disposition of a suit, but rather when a party advances the goals of the CWA. In part, it is accomplished by ensuring agencies perform their required functions. *See also S. Appalachian Mountain Stewards v. A & G Coal Corp.*, No. 2:12-CV-00009, 2014 WL 4955702 (W.D. Va. Oct. 2, 2014) (explaining that a "prevailing party is one who prevails on any significant issue and thereby achieves some of the benefits sought by bringing the suit. . . . The key factor is whether the plaintiffs advanced the goal of the CWA.").

Plaintiffs in the instant matter filed suit, in part, to require EPA to perform its non-discretionary duties by approving or disapproving TMDL submissions by WVDEP. *Second Am. Compl.*, at 23–25. This action was achieved by order of this Court and only because of Plaintiffs' suit. *EPA Decision*, at 3.[7] Though the Fourth Circuit ultimately reversed this Court's grant of summary judgment, it did so because EPA and WVDEP had developed a plan to address TMDLs through the MOA. *Op. of 4th Cir.*, at 12. The MOA itself is, by Defendants' admission, only in place because of the underlying order of this Court. *EPA Decision*, at 3. Even though the Fourth Circuit found there was no constructive submission and EPA was not required to act, its standing development and acceptance of the MOA both advanced the purpose of the CWA and brought about some of the relief sought by Plaintiffs. It is because of this accomplishment that Plaintiffs are "substantially prevailing" within in the meaning of the CWA.

---

[7] The requirements that a plaintiff's suit achieve some of the relief requested, with or without a final judgment in its favor, and advance the purpose of the CWA seems to mirror those of the catalyst theory. *See infra* Section III (D). The Court makes no specific finding as to whether the catalyst theory applies to the "substantially prevailing" portion of the statute, as it is certainly required by the "whenever appropriate" portion of the CWA's fee-shifting language and is satisfied in the instant case.

*D. Appropriateness of Fees*

Though a plaintiff must have "substantially prevailed" to allow for the recovery of attorney's fees and costs, the CWA also employs the "whenever appropriate" standard. Under the catalyst theory, "parties who obtain, through settlement or otherwise, substantial relief prior to adjudication on the merits" may be eligible for attorney fees under a "whenever appropriate" provision. *Green Valley Coal Co.*, 511 F.3d at 414. This theory is rooted in enacting the legislative purpose behind the CWA.

> The [catalyst] theory derives in large part from the Supreme Court's observation in *Ruckelshaus* that Congress intended the "whenever appropriate" standard in the Clean Air Act to allow fee recovery for "suits that force[ ] defendants to abandon illegal conduct, although without a formal court order." 463 U.S. at 686 n. 8, 103 S.Ct. 3274 (citing S.Rep. No. 91–1196 (1970)). Allowing catalyst theory recovery was, as the Supreme Court noted, a "somewhat expansive innovation" that extended fee eligibility beyond that available under the prevailing party standard. *Id.* The legislative history demonstrated, however, that Congress clearly intended such a result.

*Id.*

Adopting the D.C. Circuit's analysis of *Buckhannon*, the Fourth Circuit stated there are three factors to satisfy before a party can be considered a catalyst. "[F]irst, that [Defendant's] actions provided [Plaintiff] with 'some of the benefit sought' in the lawsuit; second, that [Plaintiff's] claims in the lawsuit were not frivolous; and third, that [Plaintiff's] lawsuit was a substantial or significant cause of [Defendant's] actions providing relief." *Id.* at 415. (citing *Sierra Club,* 322 F.3d at 726).

In the instant case, all three factors are undeniably satisfied. Plaintiffs specifically sought for EPA to perform its non-discretionary duties to approve or disapprove of TMDL submissions and ultimately develop a plan for developing those TMDLs. *Second Am. Compl.*, at 23–25. EPA performed this duty, albeit conditionally, by developing the MOA. As the development of TMDLs

is required by the CWA and a plan to develop them was not in place, this suit was not frivolous. Finally, EPA admits it would not have acted "had [it] not been ordered to do so." *EPA Decision*, at 3. It is the existence of the MOA, Defendants' admission that this suit brought about the MOA's development, and the MOA's determinative role in the Fourth Circuit's opinion, which is the saving grace in this case. Plaintiffs were undeniably a catalyst.

However, because Plaintiffs only achieved success by the court-required action by EPA, fees are only "appropriate" up until Plaintiffs attained the relief that they sought. In other words, it is only appropriate to award attorney's fees and costs incurred at the district court level.

In *Green Valley Coal*, the plaintiffs sued under the Surface Minting Control and Reclamation Act ("SMRCA") and achieved a preliminary injunction in this Court to enjoin the issuance of a permit. *Green Valley Coal*, 511 F.3d at 417–18. Plaintiffs then filed supplemental claims alleging other SMRCA violations within the administrative arena, but ultimately dropped suit because the defendants took remedial actions on the disputed land. *Id.* This Court awarded fees under SMRCA—a "whenever appropriate" statute—but the Fourth Circuit bifurcated the award on appeal. *Id.* The decision explained:

> OVEC contends that the portion of the fee award attributable to time spent on phase two may be affirmed based on the success achieved during phase one. We disagree. In *Hensley v. Eckerhart,* 461 U.S. 424, 440, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), the Supreme Court held that "where the plaintiff achieve[s] only limited success, the district court should award only that amount of fees that is reasonable in relation to the results obtained." The *Hensley* rule suggests that in the circumstance before us—involving a lawsuit with distinct phases and claims—a plaintiff is entitled to recover fees only with respect to any phase that is successful.

*Id*. As Plaintiffs in the instant case did not prevail beyond the creation of the MOA, any award of attorney's fees and costs shall be limited to Plaintiffs' achievement at the district court level.

## IV. CONCLUSION

For the aforementioned reasons the Court **GRANTS, in part,** Plaintiffs' Motion for an Award of Attorney's Fees and Expenses (ECF No. 114), insofar as Plaintiffs are substantially prevailing and such an award is appropriate, and **HOLDS IN ABEYANCE, in part,** as to the calculation of those fees and expenses.

The Court **DIRECTS** the Clerk to send a certified copy of this Order to all counsel of record, and any unrepresented parties.

ENTER: June 4, 2019

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE