IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

OHIO VALLEY ENVIRONMENTAL
COALITION, INC.,
SIERRA CLUB,
WEST VIRGINIA HIGHLANDS
CONSERVANCY, INC. and
VIRGINIA RIVERS COALITION,

            Plaintiffs,

v.                                CIVIL ACTION NO.  3:15-0271

ANDREW WHEELER, Administrator,
United States Environmental Protection Agency and
CECIL RODRIGUES, Regional Administrator,
United States Environmental Protection Agency,
Region III,

            Defendants.

## MEMORANDUM OPINION AND ORDER

On June 4, 2019, the Court granted in part Plaintiffs' Motion for an Award of Attorney's Fees and Expenses. ECF Nos. 114, 127. While the Court awarded fees and costs, it held in abeyance their calculation to allow for supplemental briefing. ECF Nos. 119, 127. After consideration of the parties' briefing, the Court **AWARDS** Plaintiffs $100,648.45 in attorney's fees and $696.59 in costs, for a total of $101,345.04.

## I. BACKGROUND

Plaintiffs brought suit against the Environmental Protection Agency ("EPA"), claiming it neglected its duty under the Clean Water Act ("CWA") to address the West Virginia Department of Environmental Protection's ("WVDEP") refusal to produce Total Maximum Daily Load ("TMDL") limits for streams designated biologically impaired.

The CWA requires states to develop water quality standards, identify waterbodies that are "impaired" under those standards, and create a TMDL for each offending body of water. 33 U.S.C. § 1313(d)(1)(C); 40 C.F.R. § 130.7(c)(1). TMDLs establish the "maximum daily discharge of pollutants into a waterway." *Hayes v. Whitman*, 264 F.3d 1017, 1021 (10th Cir. 2001) (citing *Scott v. City of Hammond*, 741 F.2d 992, 996 (7th Cir. 1984)). The state must then submit those TMDLs to EPA for approval. *Id.* If EPA disapproves a TMDL, EPA must produce its own TMDL within thirty days of disapproval. 33 U.S.C. § 1313(d)(2). A "constructive submission" exists when a "state's actions clearly and unambiguously express a decision to submit no TMDL for a particular impaired waterbody." *Hayes*, 264 F.3d at 1024. If a constructive submission occurs, EPA must approve or disapprove the absence of a TMDL within thirty days of the state's failure. § 1313(d)(2). If EPA were to disapprove the missing TMDL, meaning EPA believes a TMDL is necessary, it must produce the TMDL within thirty days. *Id.* If EPA approves the constructive submission, it need not take further action.

In 2012, the West Virginia Legislature passed Senate Bill 562, which required WVDEP to develop a new methodology to determine which bodies of water are biologically impaired under the state's narrative water quality standards. Letter from Randy C. Huffman, Cabinet Sec'y, WVDEP, to Jon M. Capacasa, Dir., Water Prot. Div., EPA Region III (Apr. 6, 2012), J.A. 3298 [hereinafter Huffman Letter]. WVDEP interpreted SB 562 to prohibit WVDEP from developing TMDLs to address streams deemed biologically impaired due to a failing West Virginia Stream Condition Index score until WVDEP developed a new methodology. Huffman Letter, J.A. 3298. EPA, conversely, did not interpret SB 562 to preclude WVDEP from developing TMDLs for biologically impaired streams. Draft TMDL for Selected Streams in the Monongahela River Watershed, W. Va. EPA Comments—Oct. 24, 2013, J.A. 188.

Plaintiffs filed claims against EPA under the citizen suit provision of the CWA arguing that WVDEP's refusal to develop TMDLs for biological impairment until it developed a new testing methodology was a constructive submission that triggered EPA's duty to approve or disapprove the submission of no TMDLs for biologically impaired bodies of water. ECF No. 78. The Court agreed and granted summary judgment in favor of Plaintiffs. ECF No. 87. The Court ordered EPA to "approve or disapprove WVDEP's constructive submission of no TMDLs for all biologically impaired bodies of water for which no TMDL has been developed to address that impairment within thirty days." *Id.* at 39. EPA appealed, and the Fourth Circuit denied EPA's motion for stay pending appeal. ECF No. 106, at 1.

On June 13, 2017, EPA conditionally approved WVDEP's constructive submission of no TMDLs. ECF No. 107-1, at 3. EPA stated it would "not take the action required by the district court (to approve or disapprove 573 "no TMDLs") if it had not been ordered to do so." *Id.* The most significant basis for accepting the protracted delay on the part of WVDEP was the Memorandum of Agreement ("MOA") between EPA and WVDEP that established a schedule to develop TMDLs "regardless of the availability of a new biological assessment methodology." *Id.* The MOA was an outgrowth of Plaintiffs' suit, as it was "[i]n response to [this C]ourt's finding that WVDEP has 'constructively submitted' 'no' TMDLs addressing the biological impairment in the Attachment 1 waterbodies, EPA worked with WVDEP to establish through an MOA a reasonable and expeditious schedule for the development of the TMDLs." *Id*. at 8.

The Fourth Circuit reversed this Court's order and found that even if the doctrine of constructive submission applied, it was not satisfied here. ECF No. 108, at 12. The circuit court founded its rationale on WVDEP's "good-faith efforts to comply with SB 562, *and* because West Virginia has a credible plan in concert with EPA to produce ionic toxicity TMDLs[.]" *Id*.

(emphasis in original). The "credible plan" referenced is the MOA, which EPA further assured it will continue to implement beyond its appeal in this matter. *Id.* at 11–12; *see also id.* at 11, n.3 (memorializing EPA's affirmation that the MOA was the basis for EPA's conditional approval, which in turn was an outgrowth of this Court's order). After denying Plaintiffs' petition for panel rehearing, the Fourth Circuit issued its mandate on August 27, 2018. ECF No. 113.

On June 4, 2019, the Court held Plaintiffs were a "substantially prevailing" party under the CWA and awarded Plaintiffs attorney's fees and costs. ECF No. 127, at 7–12; *see* 33 U.S.C. § 1365(d). The Court ruled "fees are only 'appropriate' up until Plaintiffs attained the relief that they sought" when EPA and WVDEP entered the MOA. ECF No. 127, at 12. The Court held in abeyance the calculation of those fees and costs to allow for supplemental briefing. *Id.* at 13. Having received the parties' briefing, the Court now turns to the calculation of fees and costs.

## II. LEGAL STANDARD

Calculating attorney's fees is a three-step process. *Jones v. Southpeak Interactive Corp. of Del.*, 777 F.3d 658, 675–76 (4th Cir. 2015). First, "the court must determine the lodestar figure by multiplying the number of reasonable hours expended times a reasonable rate." *Id.* (citation omitted). Second, "the court must subtract fees for hours spent on unsuccessful claims unrelated to successful ones. [Third], the court should award some percentage of the remaining amount, depending on the degree of success enjoyed by the plaintiff." *Id.* at 676 (citation omitted).

## III. DISCUSSION

### A. Step One: Determining the Loadstar Figure

#### 1. Plaintiffs' Time Prior to the MOA is Compensable.

As a preliminary matter, the Court first addresses Defendants' argument that the Court should limit Plaintiffs' fees to hours expended on Plaintiffs' successful opposition to EPA's motion

to stay pending appeal. ECF No. 129, at 5–8. This argument essentially relitigates the applicability of the catalyst theory. The Court already ruled that the relief achieved in this case—the MOA—resulted from Plaintiffs' suit and the Court's summary judgment order, not the Fourth Circuit's denial of EPA's motion to stay the order pending appeal. ECF No. 127, at 10. Accordingly, the Court ruled "fees are only 'appropriate' up until Plaintiffs attained the relief that they sought" when EPA and WVDEP entered the MOA. *Id.* at 12. This compensable time includes, but is not limited to, Plaintiffs' time spent opposing Defendants' motion for stay because EPA did not enter the MOA until Plaintiffs defeated the motion. *See* ECF Nos. 106, 107.

**2. Plaintiffs' Claimed Number of Hours is Reasonable.**

The Court must now determine an appropriate lodestar figure by multiplying the number of hours by a reasonable hourly rate. *See Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 243 (4th Cir. 2009). In his declaration, Plaintiffs' counsel summarizes the hours spent on Plaintiffs' two CWA claims. ECF No. 114-1 ¶ 52. He requests a total of 279.10 hours. *Id.* ¶ 56.

Defendants object to two specific time entries in Plaintiffs' calculations. First, Defendants object to the inclusion of .63 hours for time spent on Plaintiffs' Second Amended Complaint. ECF No. 129, at 12. Plaintiffs concede they filed the Second Amended Complaint to comply with a settlement in an unrelated matter, so the Court deducts this time. ECF No. 130, at 1, n.1. Second, Defendants object to part of the time claimed for Plaintiffs' Motion to Supplement the Administrative Record because Plaintiffs also sought discovery that the Court denied. ECF No. 129, at 13. However, the Court denied Plaintiffs' discovery request because it was "cumulative of the record supplementation" that the Court granted. ECF No. 51, at 12. Plaintiffs made these two requests to reach the same outcome, and it is well established that "[l]itigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach

certain grounds is not a sufficient reason for reducing a fee." *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983). The Court therefore denies Defendants' objection and credits Plaintiffs for all time spent on their Motion to Supplement the Administrative Record.

Lastly, Plaintiffs' time spent defending their entitlement to fees and arguing the fee amount is compensable. *Hymes v. Harnett Cty. Bd. of Ed.*, 664 F.2d 410, 413 (4th Cir. 1981). The Court finds Plaintiffs' total of 42.46 hours reasonable and adds it to Plaintiffs' compensable time. *See* ECF No. 130, at 16. This includes: 16.92 hours for Plaintiffs' Reply to EPA's Response in Opposition to Plaintiffs' Motion for an Award of Attorney's Fees and Costs (ECF No. 118); 4.10 hours for Plaintiffs' Response to EPA's Motion (1) to Hold This Case in Abeyance and (2) If an Abeyance is not Granted, to Extend the Date for EPA's Supplemental Filing (ECF No. 122); and 21.44 hours for Plaintiffs' Response to EPA's Supplemental Response in Opposition to Plaintiffs' Motion for Attorneys' Fees and Costs (ECF No. 130). *Id.*

**3. Plaintiffs' Claimed Hourly Rates are Reasonable.**

Because Plaintiffs' fees are to be paid by the government, the Court must not use current rates. *Nat'l Wildlife Fed'n v. Hanson*, 859 F.2d 313, 318 (4th Cir. 1988). Instead, the Court must base the fees on historic rates—those in effect at the time the attorney expended the hours. *Id.* Each attorney's hours should be identified by year, and the applicable rate for that year should be multiplied by the number of hours expended during that year. *Id.*

Plaintiffs' counsel requests rates increasing from $295 per hour in 2014 to $335 in 2018. ECF No. 114, at 2. Defendants do not challenge these rates, and Plaintiffs' counsel corroborates them in detail with rates obtained in fee awards and settlement agreements in other citizen suits to enforce federal environmental statutes. ECF No. 114-1 ¶¶ 20–50. The requested rates are also consistent with those recently awarded by this Court in a different CWA citizen suit. *Ohio Valley*

*Envtl. Coal., Inc. v. Fola Coal Co., LLC*, No. 2:13-5006, 2016 WL 8252928, at *3, n.4 (S.D.W. Va. Aug. 30, 2016) (awarding fees ranging from $240 to $450 per hour). The Court therefore finds the requested rates are reasonable in light of counsel's experience and expertise and appropriate for this fee award.

### B. Step Two: Subtracting for Unsuccessful Claims Unrelated to Successful Ones

#### 1. Plaintiffs Properly Excluded Time Spent on Their APA Claims.

Per step two of the fee analysis, Plaintiffs must subtract fees for hours spent on unsuccessful claims that are unrelated to successful ones. *Jones*, 777 F.3d at 676. Plaintiffs thus counted time spent on their two CWA claims but omitted time spent on their unsuccessful Administrative Procedure Act claims. ECF No. 114-1 ¶¶ 54–55. To do so, Plaintiffs used the number of pages devoted to a claim as a proxy for the time spent on that claim. *Id.* Defendants criticize this method as too imprecise. ECF No. 129, at 11–12. However, the Court has held that this widely-accepted page-count method is reasonable for complex environmental litigation. *Ohio Valley Envtl. Coal. v. Fola Coal Co., LLC*, No. 2:13-cv-16044, 2017 WL 1712525, at *3 (S.D.W. Va. May 2, 2017); *see also Turner v. D.C. Bd. of Elections and Ethics*, 354 F.3d 890, 894–95, 899 (D.C. Cir. 2004) (upholding district court's use of motions pages as a proxy for time allocation); *JTH Tax, Inc. v. H & R Block E. Tax Servs., Inc.*, 245 F. Supp. 2d 756, 760 (E.D. Va. 2002) (measuring the time spent on an issue by the written submissions on that issue). The Court reaffirms that position here and holds Plaintiffs properly excluded time spent on their APA claims.

#### 2. Time Spent on Plaintiffs' First Claim for Relief is Compensable.

Defendants argue that Plaintiffs should not recover fees for time spent on their first claim for relief because Plaintiffs did not prevail on this claim and it was not a predicate for the MOA. ECF No. 129, at 3. However, Defendants misapply the standard. Fees are prohibited for

unsuccessful claims that are unrelated to successful claims, but fees are permitted for unsuccessful claims that are related to successful ones. *Hensley*, 461 U.S. at 434–35. Here, Plaintiffs' first and second claims involved the same legal provisions and the same set of streams. ECF No. 78 ¶¶ 71– 82. The first claim alleged West Virginia's actual submission of no TMDLs triggered EPA's non-discretionary duties to disapprove the submissions and develop TMDLs for those streams. ECF No. 78 ¶¶ 71–76. The second claim is identical, except that it alleged West Virginia constructively submitted no TMDLs. *Id.* ¶¶ 77–82. These claims involve both a "common core of facts" and "related legal theories," and Plaintiffs raised these alternative legal grounds to reach the same desired outcome. *Hensley*, 461 U.S. at 435. Thus, "the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee." *Id.*

### C. Step Three: Determining the Degree of Success

The third step directs the Court to award fees based on Plaintiffs' degree of success. *Jones*, 777 F.3d at 676 (citation omitted). This can be challenging, for no "precise rule or formula" exists. *Id.* (citing *Hensley*, 461 U.S. at 436). However, the Supreme Court has explained that "excellent results," for which an attorney "should recover a fully compensatory fee," need not be perfect. *Hensley*, 461 U.S. at 435; *e.g.*, *Jones*, 777 F.3d at 676–77 (affirming award of full lodestar even though the recovery was one-third of the amount sought). In other words, "a plaintiff who has won substantial relief should not have his attorney's fee reduced simply because the district court did not adopt each contention raised." *Id.* at 440, 435, n.11 (noting that a plaintiff who obtains an injunction but not damages, or vice versa, may still recover a fee award for all hours reasonably expended); *Brooks v. Ga. State Bd. of Elections*, 997 F.2d 857, 868 (11th Cir. 1993) (refusing to reduce lodestar on the ground that the plaintiff did not obtain every aspect of injunctive relief sought).

Defendants argue that the relief Plaintiffs obtained, the MOA, is a fraction of the relief Plaintiffs sought, so Plaintiffs' fees should be drastically reduced. ECF No. 129, at 8–10. The Court disagrees with this characterization. At its core, Plaintiffs' suit sought to compel EPA to act under § 1313(d)(2) in the face of WVDEP's intransigence, and Plaintiffs succeeded. In their Second Amended Complaint, Plaintiffs asked the Court to compel EPA to disapprove WVDEP's alleged constructive submission of no TMDLs and establish the TMDLs itself. ECF No. 78, at 36. The Court determined it could only order EPA to approve or disapprove the constructive submission, which the Court did. ECF No. 87, at 37–39. The Court's order led to the MOA, under which EPA conditionally approved the constructive submission of no TMDLs to allow WVDEP time to develop TMDLs for submission. ECF No. 107-2.

Plaintiffs' request for injunctive relief proved overambitious and beyond the Court's authority, but Plaintiffs' success "is not diminished by virtue of [their] optimistic prayer for relief." *Swanson v. Martwick*, 726 F. Supp. 210, 211 (N.D. Ill. 1989) (rejecting magistrate judge's recommendation to reduce fees by twenty percent even though the damages awarded were less than those sought and the court did not grant plaintiff's request for equitable relief). In the end, Plaintiffs succeeded by catalyzing EPA's § 1313(d)(2) decision and the MOA. The Fourth Circuit's reversal of this Court's summary judgment order does not undercut Plaintiffs' success because the Fourth Circuit based its reversal on the existence of the MOA, which Defendants entered because of this Court's order. ECF No. 107-1, at 8 (stating the MOA was an outgrowth of Plaintiffs' suit, as it was "[i]n response to [this C]ourt's finding that WVDEP has 'constructively submitted' 'no' TMDLs [that] EPA worked with WVDEP to establish through an MOA a reasonable and expeditious schedule for the development of the TMDLs"); ECF No. 108, at 12 (holding constructive submission would not be satisfied, in part, because "West Virginia has a

credible plan in concert with EPA to produce ionic toxicity TMDLs," meaning the MOA). Thus, the "substantial relief" achieved in this case deserves a fully compensatory fee, even though Plaintiffs did not achieve all the injunctive relief sought in their Second Amended Complaint. *See Ohio Valley Envtl. Coal.*, 2016 WL 8252928, at *2 (declining to reduce fees on the ground that the Court ordered defendant to use a different water treatment technology than what plaintiffs sought).

**D. Plaintiffs' Costs Are Reasonable.**

Finally, Plaintiffs request the following typical costs, none of which Defendants contest. ECF No. 114-1 ¶ 57. The Court finds these costs reasonable and compensable.

| Item | Amount |
|---|---|
| Postage for Notice Letter (11/7/2014) | $14.24 |
| Filing Fee for Complaint | $400.00 |
| Postage for Service of Complaint (2/12/2015) | $41.24 |
| Postage to Send Courtesy Copy of Opening Summary Judgment Brief to Court (12/2/2015) | $5.95 |
| Travel Expenses for Attending Oral Argument on Cross-Motions for Summary Judgment in Huntington, WV (including mileage, tolls, parking, and meals) | $235.16 |
| **TOTAL:** | **$696.59** |

### IV. CONCLUSION

The Court **AWARDS** Plaintiffs $100,648.45 in attorney's fees and $696.59 in costs, for a total of $101,345.04. The fee award includes the $86,622.80 requested in Plaintiffs' fee motion, minus $198.45 for the .63 hours spent on Plaintiffs' Second Amended Complaint (calculated at $315 per hour), and plus $14,244.10 for the 42.46 hours spent on Plaintiffs' three fee-related motions (calculated at $335 per hour). Plaintiffs' fee award is thus calculated as follows:

| Service Date | Hours | Hourly Rate | Fees |
|---|---|---|---|
| July 1, 2014, to June 30, 2015 | 41.47 | $295.00 | $12,233.65 |
| July 1, 2015, to June 30, 2016 | 115.27 | $305.00 | $35,157.35 |
| July 1, 2016, to June 30, 2017 | 87.31 | $315.00 | $27,502.65 |
| July 1, 2017, to June 30, 2018 | 0.00 | $325.00 | $0.00 |
| July 1, 2018, to present | 76.88 | $335.00 | $25,754.80 |
| **TOTAL:** | 320.93 | ----- | $100,648.45 |

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties.

ENTER: January 15, 2020

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE